## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**GTEC INDUSTRIES, INC.,**
**a Georgia corporation**
**1735 Mountainside Dr.**
**Cumming, GA 30040**

     **Plaintiff,**

**vs.**                              **Case No. _____**

**LINDA McMAHON, Administrator,**
**U.S. Small Business Administration,**
**409 3rd St SW**
**Washington, DC 20024**

     **Serve:  David Fishman, Assistant General Counsel**

     **Defendant.**
_____/

## COMPLAINT

Plaintiff GTEC Industries, Inc., a Georgia for-profit corporation ("GTECI"), sues Defendant Linda McMahon, in her capacity as Administrator of the United States Small Business Administration ("SBA"), and alleges:

### Introduction

1.    This is an action for declaratory and supplemental relief in which GTECI seeks review of SBA's final agency action denying GTECI's application to participate in the 8(a) Business Development Program that SBA administers and oversees (the "Program").

2.    As SBA explains on its website,[1] the primary purpose of the Program is "[t]o help provide a level playing field for small businesses owned by socially and economically

---

[1]   *See*   www.sba.gov/federal-contracting/contracting-assistance-programs/8a-business-development-program, last accessed on April 11, 2019.

disadvantaged people or entities" by limiting competition for certain federal contracts only to entities that SBA certifies as being eligible to participate. Certification occurs after an entity applies to SBA and demonstrates that the small business meets the Program's eligibility requirements. According to SBA's website, the federal government seeks to award five percent (5%) of total federal contracting dollars to certified small business entities enrolled in the Program. Therefore, being certified to participate in the Program would be a significant advantage or benefit to a small business such as GTECI.

3.      As is explained further below, GTECI is wholly owned by the Georgia Tribe of Eastern Cherokee, an American Indian Tribe recognized under state law whose ancestors were part of the Cherokee peoples suffering forced deportation from their homelands along what is commonly referred to as the "Trail of Tears." Recognizing the significant historical discrimination that members of American Indian Tribes have suffered, and the resulting social and economic disadvantages that tribal business entities face, the Program allows qualified tribal entities (and GTECI is one of them) to apply to SBA for certification to participate in the Program. GTECI did submit a proper application, only to see it languish through SBA's interminable review process that missed every deadline prescribed under SBA's own promulgated rules before the agency finally and inappropriately denied the application.

4.      But SBA's stated grounds for its denial were arbitrary, capricious and contrary to law, and the agency abused any discretion it had when considering GTECI's application. Therefore, the agency's final decision to deny GTECI's application should be judicially reviewed and overturned for numerous reasons.

5.      For example, where SBA claimed in its final denial determination that it lacked information required to approve GTECI's application, that information had been provided by

GTECI over a year before. Therefore, all of the information could readily and easily be found in the agency's own application file. Similarly, when SBA alternatively claimed that the agency supposedly could not understand other financial information that GTECI had provided to support its application, the agency did not seek any clarification and, instead, merely denied GTECI's application. But the information that the company had provided was, in any event, clear and concise, leaving the agency's final agency action denying the application indefensible or, putting the same matter another way, arbitrary, capricious, contrary to law, or a clear abuse of any discretion that agency had to review GTECI's application.

6.     GTECI therefore seeks legal review and appropriate redress, including the approval of its application, or other related relief, for the more specific reasons that will follow.

## Jurisdiction and Venue

7.     As previously stated, this is an action for declaratory and supplemental relief and is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.* The action is commenced following SBA's final denial of GTECI's application to participate in the Program and, therefore, challenges final "agency action" as that term is defined in the Administrative Procedures Act ("APA"), 5 U.S.C. §551(13). This Court therefore has jurisdiction over the subject matter pursuant to 28 U.S.C. §1331(relating to federal questions) and 5 U.S.C. §§701 - 706 (providing for waiver of sovereign immunity and a cause of action under the APA).

8.     Venue is proper pursuant to 28 U.S.C. §1391(e).

## Parties

9.     GTECI is a for-profit Georgia corporation that was formed in 2009 to offer consulting services to clients in both the private and governmental sectors. GTECI is wholly owned by the Georgia Tribe of Eastern Cherokee, an American Indian Tribe recognized by the

State of Georgia (the "Tribe"). *See* OCGA 44-12-300(a); 13 C.F.R. §124.3. Any net profits that

GTECI generates will be used for the Tribe's welfare and economic development. GTECI is

therefore a "tribally owned concern" that is eligible to apply for SBA's certification to participate

in the Program. *See* 13 C.F.R. §§124.3; 124.109. The current Chairman or Chief of the Tribe,

Mr. L. Lamar Sneed, is also an officer of GTECI.

10.     Defendant Linda McMahon is SBA's Administrator and is sued only in her

official capacity. SBA is an independent agency of the United States established, among other

things, to aid, counsel, assist and protect the interests of small business concerns such as GTECI.

## Other Common Allegations

11.     SBA administers the Program which, in turn, is authorized by the Small Business

Act, 15 U.S.C. §631 *et seq.* (the "Act"). SBA is charged under the Act to receive and review

applications from small business to participate in the Program. SBA must approve those

applications, and certify the applying entity to participate in the Program, if the applicant

demonstrates it holds the necessary qualifications and meets the eligibility criteria set forth in the

Act and its implementing regulations, including those found at 13 C.F.R. 124.101 *et seq*.

12.     An applicant can expect to receive SBA's approval or certification to participate

in the Program if, as a general matter, the applicant can demonstrate that -

> it is a small business which is unconditionally owned and
> controlled by one or more socially and economically
> disadvantaged individuals who are of good character and citizens
> of and residing in the United States, and which demonstrates
> potential for success.

13 C.F.R. §124.101. Special additional rules set forth at 13 C.F.R. §124.109 apply to

applications submitted by tribally-owned entities, with some of the requirements of that rule

applying in this particular case to the Tribe, others to GTECI.

4

13.     As for the Tribe, it was required to demonstrate to SBA that it was "economically disadvantaged" by providing "available data showing the tribe's economic condition." 13 C.F.R. §124.109(b).[2] More particularly, the regulation requested that the Tribe submit available information related to the number of Tribal members; their unemployment rate and per capita income; the percentage of the "local Indian population" living below the poverty line; the Tribe's ability to access capital; and a list of Tribally-owned enterprises, industry classifications and Tribal members serving as officers or directors for those entities. 13 C.F.R. §124.109(B)(2)(i) - (v), (vii).

14.     An additional consideration was "tribal assets as disclosed in a current tribal financial statement." 13 C.F.R. §124.109(b)(2)(vi). The regulation, however, did not require any particular form for the Tribe's financial statement. Instead, it only had to "list all assets including those which are encumbered or held in trust, but the status of those encumbered or in trust must be clearly delineated." *Id.*[3]

15.     As for GTECI, the provisions of 13 C.F.R. §124.109(c) imposed a number of requirements for it to successfully apply for SBA's certification to participate in the Program. One of them, "potential for success," is discussed at 13 C.F.R. §124.109(c)(6) and generally meant that GTECI had to demonstrate that the company "possess[ed] reasonable prospects for success in competing in the private sector if admitted to [the Program]. *Id.* GTECI could meet that requirement according to the rule in several ways, one of which was if the company

---

[2] The Tribe was not required to demonstrate that it was socially disadvantaged because the regulation presumed that was the case. *See* 13 C.F.R. §124.109(b)(1) (a state-recognized Indian tribe "is considered to be socially disadvantaged").

[3] As a final requirement, the Tribe was required to submit in support of a tribally-owned entity's application for participation in the Program any of the Tribe's organizational or organic

submitted the Tribe's "firm written commitment to support the operations of the applicant concern," along with evidence of the Tribe's "financial ability to do so." 13 C.F.R. §124.109(6)(iii).

### GTECI's Application to Participate in the Program

16.     On or about May 31, 2017, GTECI as a tribally-owned concern submitted its application for enrollment in the Program (the "Application"). Among other things, the Application was supported by the Tribe's fully completed SBA Form 1010-AIT, a true and correct copy of which is attached as Exhibit A, that contained, along with additional submitted materials, all of the information that 13 C.F.R. §134.109(c)(i)-(vii) required (as discussed above) to support a finding of the Tribe's economic disadvantage.

17.     Next, to demonstrate GTECI's potential for success, the company provided a written statement from Chief Sneed in which he committed, on behalf of the Tribe, to financially support GTECI in its future business endeavors. A true and correct copy of the Tribe's financial commitment is attached as Exhibit B.

18.     More particularly, Chief Sneed stated in pertinent part that -

> The Georgia Tribe of Eastern Cherokee . . . hereby make[s] a firm commitment to support in every way needed the operations of wholly owned subsidiary GTEC Industries, Inc. Towards these ends, the Tribe has the financial ability to do so. The Tribe has already allocated $29,000 in 2017 to support the operations of GTEC Industries. These funds are currently deposited in our tribal account and available for future use by GTEC Industries. Additional funds will also be made available through the resources of [another Tribal subsidiary entity] and tribal members. The Tribe is fully committed to supporting the operations of GTEC Industries. As our Tribe's for-profit company, [GTECI] seeks to further economic development and welfare improvement for the

documents, and any information related to its eligibility as an Indian tribe to participate in special state or federal programs. 13 C.F.R. §124.109(3).

Tribe in 2017 and in the years ahead. For this mission, the Tribe
makes an ongoing and firm commitment of financial support.

GTECI also supported the Application with copies of various Tribal financial statements
generally related to these commitments, and later updated them as requested. True and correct
copies of the December 31, 2016 and May 31, 2017 statements are attached as Composite
Exhibit C.

19.     SBA determined that the Application was complete on October 17, 2017, and
notified GTECI of that determination on October 24, 2017. A true and correct copy of SBA's
notification is attached as Exhibit D. SBA staff then began an internal process to review the
Application and to prepare a final report and recommendation to senior SBA officials.

### SBA's Initial Decision to Deny the Application

20.     The provisions of 13 C.F.R. §124.204, required that the agency announce its
decision to approve or deny the Application within 90 days of its acknowledged completion, see
Exhibit D, or no later than January 15, 2018. That, however, did not happen.

21.     Instead, only after much prodding from GTECI (and from the office of Georgia
Senator Perdue, following the company's urgent request for Congressional assistance), SBA
issued its letter dated May 14, 2018, denying the Application (the "Initial Denial," a true and
correct copy of which is attached as Exhibit E). That was nearly one year after the Application's
initial submission, and nearly five months (approximately 150 days) after the 90-day deadline
prescribed in SBA's own rules for the agency to consider the Application and announce its
decision to grant or withhold Program certification. SBA offered no explanation for its egregious
delay.

22.     Instead, in the Initial Denial signed by Acting Associate Administrator Sharon
Gurley, SBA offered two reasons for its decision to deny the Application. First, she concluded

that GTECI had not demonstrated that the Tribe was economically disadvantaged as 13 C.F.R.

§124.109(b)(2) required. More particularly, after reviewing the information that the Tribe had

submitted, including with its Form 1010-AIT and other submissions as noted above, SBA stated

that -

> This [required] demonstration [of economic disadvantage] must
> involve the consideration of available data showing the tribe's
> economic condition, including but not limited to, the following
> information: (i) The number of tribal members; (ii) The present
> tribal unemployment rate; (iii) The per capita income of tribal
> members, excluding judgment awards; (iv) The percentage of the
> local Indian population below the poverty level; (v) The tribe's
> access to capital; (vi) *The tribal assets as disclosed in a current
> tribal financial statement. The statement must list all assets
> including those which are encumbered or held in trust, but the
> status of those encumbered or in trust must be clearly delineated;
> [and]* (vii) A list of all wholly or partially owned tribal enterprises
> or affiliates and the primary industry classification of each. The list
> must also specify the members of the tribe who manage or control
> such enterprises by serving as officers or directors.

(Initial Denial at pp. 1-2 (emphasis added)). Importantly, SBA then found or acknowledged that

"*you have provided* most of the above [namely items (i) through (v) and (vii)], with the

exception of the tribe's current financial statements listing all tribal assets." *Id.* (emphasis

added). Thus, SBA's Initial Denial acknowledged that GTECI's or the Tribe's submissions had

fully addressed items (i) - (v) and (vii) related to economic disadvantage considerations, and

indeed they had.

23.    That left according to SBA only item (vi) noted in the Initial Denial related to

Tribal financial statements being, in the agency's view, either missing, incomplete or somehow

insufficient. More particularly on this key point, SBA in the Initial Denial went on to state that -

> SBA requested [Tribal financial statements], and the tribe
> responded by providing the financial statements of a not-for-profit
> entity (Georgia Tribe of Eastern Cherokee, Inc.) that it wholly
> owns/controls. This, however, does not meet the requirement of

> providing tribal financial statements. Therefore, without all of the
> necessary information required per the regulations, SBA finds that
> the [Tribe] has not satisfied the requirements to be found
> economically disadvantaged.

(Initial Denial at p. 2).

24.     Contrary to SBA's determination, GTECI at SBA's request had submitted Tribal

financial statements on October 6, 2017, clearly labeled on each page as such, containing all

required information. Because these financial statements were in agency's files related to the

Application, there was no proper basis for SBA to conclude in the Initial Denial that GTECI or

the Tribe had failed to submit the required tribal financial statements. Instead, after considering

the statements, SBA should have instead determined that the Tribe was economically

disadvantaged.

25.     The Initial Denial also stated a second reason for SBA's decision to deny the

Application. More particularly, the agency alternatively concluded that GTECI had not

demonstrated its "potential for success" as 13 C.F.R. §124.109(c)(6) required. SBA in this regard

stated or found that -

> Your application indicates that the tribe has provided a written
> commitment to support the firm's operations. However, the tribe
> has not established that it has the financial capacity to do so. SBA
> requested the tribe's financial statements, and repeatedly received
> the financial statements of a not-for-profit entity that is wholly
> owned/controlled by the tribe. Because the tribe has not established
> that it, independent of its subsidiary entities, has the financial
> capacity to support the applicant business concern, there is no basis
> upon which to find that the potential for success requirement has
> been met.

(Initial Denial at p. 2). In other words, SBA was again claiming that it lacked Tribal financial

statements when, in fact, the agency had had them in its possession for over eight months and

they were clearly labeled on each page as such. Those statements were sufficient to show that

GTECI, which enjoyed the financial support of the Tribe, had the required "potential for success."

26.     But, taking SBA at its word, the Initial Denial could only point to one alleged deficiency in the Application, namely the absence of Tribal financial statements reflecting the Tribe's assets and liabilities, and demonstrating that those assets were sufficient to support GTECI.

### GTECI Requests SBA's Reconsideration

27.     The Initial Denial also stated that GTECI could seek SBA's reconsideration of its decision to deny the Application and also stated what the company had to provide to obtain a favorable decision. More particularly, SBA stated that GTECI had to provide *only* the following items to obtain reconsideration and approval of the Application -

> (i)     Evidence that the Georgia Tribe of Eastern Cherokee satisfies the requirements sufficient to establish its economic disadvantage, as per 13 CFR 124.109(b)(2), *specifically current tribal financial statements*;
>
> (ii)    Evidence that the Georgia Tribe of Eastern Cherokee satisfies the potential for success requirements, as per 13 CFR 124.109(c)(6);
>
> (iii)   The firm's 2017 FYE and 2018 financial statements no older than 90 days with an aging of accounts receivable and payable listing client/creditor names, age of accounts and dollar value of accounts; [and]
>
> (iv)    Certification that there have not been any changed circumstances which could adversely affect any of the other eligibility areas since submission of your application.

(the "Reconsideration Criteria," Initial Denial at p. 3 (emphasis added)).

28.     GTECI carefully considered the Reconsideration Criteria. Relying on the agency's written statements and assurances that the reasons stated in the Initial Denial were the *only* reasons that the Application had been denied, and what the agency would accept to cure any stated deficiencies, GTECI timely sought the agency's reconsideration on June 17, 2018. A true

and correct copy of GTECI's letter requesting reconsideration is attached as Exhibit F.

29.     To address the Reconsideration Criteria, GTECI and the Tribe also engaged professionals, including legal counsel and a Certified Public Accountant, to assist with the preparation and submission of a reconsideration package. So that there should be no confusion or misunderstanding regarding the type and form of any information that SBA said it would require to address the Reconsideration Criteria (particularly regarding the form and sufficiency of any Tribal financial statements), GTECI organized and hosted a conference call on June 12, 2018 to allow Tribal representatives to ask questions of, and receive guidance from, Mr. Robert E. Willis. He was an SBA Business Opportunity Specialist (BOS) assigned to review the Application and authorized to speak on the agency's behalf about it. Participating on the conference call were five representatives for the Tribe and GTECI, including Chief Sneed, an accountant and an attorney.

30.     They posed several questions to Mr. Willis, and received helpful answers, regarding the Reconsideration Criteria and, particularly, the form and content of the Tribal financial statements that SBA was requesting from GTECI. For instance, GTECI asked Mr. Willis if the SBA was requiring a minimum amount of unencumbered funds to appear on the Tribe's financial statement which, when pledged to support GTECI, would satisfy any "potential for success" requirement - he replied "no." After considering that response and the other information he provided, the representatives left the conference call with what they understood was clear direction regarding what financial statements and other information SBA was requiring to allow GTECI to address each of the Reconsideration Criteria, knew that information could and would be provided to the agency after the conference and, therefore, expected SBA's swift approval of the Application after the agency had received and considered GTECI's

reconsideration request and supporting materials.

31.     GTECI provided those reconsideration materials on June 18, 2018 addressing, point-by-point, the Reconsideration Criteria (SBA did not request that GTECI or the Tribe re-submit any materials that had already been provided as part of the Application). More specifically, along with a statement that there had not been any other material changes to the Application, GTECI provided updated Tribal financial statements that the Tribe's accountant had prepared following the telephone discussion with Mr. Willis, including one that stated the Tribe's financial position as of December 31, 2017, and another reporting that position as of May 31, 2018. True and correct copies of those Tribal financial statements are attached as Exhibit G.

32.     To summarize the more salient points, the Tribe reported that it held "cash and cash equivalents" in the amount of $31,420 as of December 31, 2017 and $30,914 as of May 31, 2018. In addition, the $10,000 contribution receivable was received within the first few weeks of June 2018.  Moreover, the Tribe reported it did not have any external debt and, therefore, that its total "Unrestricted" assets, or those that would be available to support GTECI to the extent necessary, and in conformity with Chief Sneed's written pledge of support, were over $47,000 on December 31, 2017, and over $52,000 on May 31, 2018.

33.     SBA never requested that GTECI or the Tribe clarify or explain any aspect of these Tribal financial statements; therefore, GTECI reasonably expected, based upon guidance from Mr. Willis and without subsequent correspondence from SBA, that the financial statements were acceptable and successfully addressed the Reconsideration Criteria.

34.     But the optimism that had gripped GTECI's and the Tribe's representatives in the wake of that telephone conference with Mr. Willis, and the submission of the company's reconsideration materials, soon dissipated. First, despite the 45-day time period prescribed at 13

12

C.F.R. §124.205(b) for SBA to reach its reconsideration decision, the agency took an inordinate amount of time (over 160 days) to reconsider GTECI's Application. Then, during the SBA reconsideration review process, the agency requested additional information unrelated to the Reconsideration Criteria. While these requests were not addressed by SBA in its Initial Denial, GTECI provided in good faith all requested information. Again, SBA never reached out to the company or the Tribe to state any concerns about the completeness or accuracy of any of the materials that had been provided in support of reconsideration, or to request any clarifications.

## SBA's Final Denial of the Application

35.     Instead, SBA in a letter dated November 26, 2018, announced that the agency was again denying the Application (the "Final Denial," a true and correct copy of which is attached as Exhibit H). This letter was signed by Acting Associate Administrator John W. Klein, a different SBA official from the one who had signed the Initial Denial.

36.     He again offered the same two reasons for this denial as the prior one. Mr. Klein first concluded that the Application had to be denied because the Tribe had not established to SBA's satisfaction that it was economically disadvantaged. After again listing the seven factors or criteria set forth at 13 C.F.R. §124.109(c)(6) generally discussed above, Mr. Klein stated, after apparently overlooking the Tribe's Form 110-AIT submission and other information in the GTECI application file, that -

> The only information submitted upon reconsideration was two financial statements for the Tribe, one for 2017 and one for 6 months of 2018. *None of the other information listed above [from 13 C.F.R. §124.109(c)(6)(i) – (vii)], and required by the regulations, was provided.* Without specific information about the number of tribal members, present tribal unemployment rate, per capita income of tribal members, percentage of tribal population below poverty level, or the tribe's access to capital, we are unable to determine the tribe is economically disadvantaged.

(Final Denial at p. 2 (emphasis added)).

37.     Mr. Klein also stated that GTECI had not demonstrated its potential for success through the Tribe's "firm written commitment to support the operation of [GTECI]" or that the Tribe "has the financial ability to do so." Final Denial at p. 2. More specifically, Mr. Klein stated that -

> You provided financial records for the tribe, but we are unable to determine if the tribe has the financial ability to support [GTECI]. The current financial statement for 2018 lists total net assets for the tribe at $52,835. *However, it is unclear how much of this is available to [GTECI] and in what form it is available. It is also unclear if the tribe has any additional resources to financially assist [GTECI].* Therefore, there is insufficient information to determine if [GTECI] has the potential for success based on the letter of commitment from the tribe.

*Id.* (emphasis added). No other grounds or reasons for SBA's denial of the Application were provided or stated.

38.     Finally noting that this final denial was on reconsideration, SBA declined to consider any other information or further explanations that GTECI or the Tribe might have offered. Instead, SBA merely invited GTECI to submit another application for certification to participate in the Program in one year's time. *Id.*

39.     It should be noted that it took SBA nearly one and a half years to consider the Application before rendering a final decision, or from May 31, 2017 (the date of the initial submission) to November 26, 2018 (the date of the Final Denial). By statute and rule this was supposed to be a much more expeditious process. A time line that GTECI prepared summarizing the extended review process from beginning to unfortunate end, and noting important way-points, events and communications, is provided as Exhibit I.

40.     In any event, the Final Denial constituted final agency action as that term is defined in the APA at 5 U.S.C. §§551(13) and 704.

41.     GTECI has engaged the services of undersigned counsel and is required to pay them a reasonable fee.

42.     All conditions precedent to the institution of this action have occurred, been satisfied or waived.

## COUNT I
### (Declaratory and Supplemental Relief)

43.     GTECI restates the allegations of paragraphs 1 through 42.

44.     When considering the Application, SBA was required to consider and rely upon only documents and materials that are included in the administrative record, in this case the file that SBA created and was required to maintain related to the Application. *See* 13 C.F.R. §124.204(d).

45.     Moreover, when GTECI requested that SBA reconsider the Initial Denial, GTECI was not required to re-submit its initial Application or any of the other materials that GTECI had already provided to the agency in support of the Application down to the date of the Initial Denial. Instead, GTECI at its option could "submit a revised electronic application or submit its request for reconsideration to the [SBA] unit that originally processed its application...." 13 C.F.R. §124.205(a).

46.      GTECI submitted its reconsideration information that specifically, fully and properly addressed each of the Reconsideration Criteria, particularly those that required the preparation and submission of Tribal financial statements.

47.     When reviewing all of the materials contained in its own files related to the Application, and in rendering any decision to either certify GTECI as being eligible to participate

in the Program, or to deny certification, SBA had to reach a decision that was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §706(2)(A). Moreover, SBA was required, following GTECI's request for reconsideration, to explain why in the agency's view the company was still not eligible to participate in the Program, "and give specific reasons for the decline." 13 C.F.R. §124.205(b).

48.     SBA's decision to deny the Application as stated in the Final Denial following reconsideration was arbitrary, capricious, contrary to law and an abuse of SBA's discretion, for several reasons. First, when Mr. Klein stated in the Final Denial that GTECI or the Tribe had not submitted all of the information that 13 C.F.R. §124.109(c)(6)(i) – (vii) required related to the issue of the Tribe's economic disadvantage, he improperly refused to consider the information that had been previously provided, and that all of this information therefore was in the administrative record, addressing each the regulation's seven points. In fact, the Tribe's provision of all of this information was a requirement for SBA to even begin its internal review process, which the agency did after acknowledging in the referenced communication to GTECI that its Application was complete. Moreover, in the Initial Denial, SBA acting through another administrator had already acknowledged that GTECI's and the Tribe's earlier submissions had addressed each of the regulation's information requirements other than, in the agency's view, the one dealing with Tribal financial statements. Looking at the information contained in SBA's own files, as supplemented on reconsideration, SBA should have determined that the Tribe was economically disadvantaged.

49.     Next, Mr. Klein acknowledged that GTECI and the Tribe had submitted tribal financial statements in support of the reconsideration request showing that in 2018 the Tribe had "total *net* assets" of $52,835. Final Denial at p. 3 (emphasis added). Mr. Klein did not state or

find that this amount was insufficient to financially support GTECI or, putting the same matter another way, that the Tribe lacked sufficient financial resources to back its written commitment provided through Chief Sneed to support GTECI and, thereby, confirm its subsidiary's "potential for success."

50.     Instead, Mr. Klein claimed that it was somehow unclear to him and SBA (i) how much of the Tribe's assets were available to support GTECI, (ii) what form the reported assets were in, and (iii) whether the Tribe had any other financial resources to support GTECI. *Id.* But, contrary to any such findings, the tribal financial statements that GTECI and the Tribe had submitted, particularly on reconsideration, were not unclear on any of these points. Regarding the May 2018 Tribal financial statement that Mr. Klein apparently reviewed, this was a simple document that stated, in full, as follows:

**Georgia Tribe of Eastern Cherokee**
**Statement of Net Assets**
**May 31, 2018**

| | |
|---|---|
| <u>Assets</u> | |
| Cash and cash equivalents | 30,914 |
| Contributions receivable | 10,000 |
| Capital assets, net | 11,795 |
| Due from [affiliate] | 100 |
| Other assets | <u>27</u> |
| **Total Assets** | <u>52,835</u> |
| | |
| <u>Liabilities</u> | |
| Accounts Payable | - |
| | |
| <u>Total Liabilities</u> | - |
| | |
| <u>Net Assets</u> | |
| Unrestricted | <u>52,835</u> |
| | |
| **Total Net Assets** | <u>52,835</u> |

51.     The financial statement therefore clearly states what portion of the Tribe's assets are held in cash and cash equivalents ($30,914), contributions receivable ($10,000), the net book value of its "capital assets," and other asset categories. Moreover, the financial statement noted that the Tribe had no debt and, therefore, its total assets of $52,835 were "unrestricted" or unencumbered. Because the assets were unencumbered, they were available if needed to assist GTECI. The information provided on the financial statement was therefore more than sufficient to satisfy the requirements of 13 C.F.R. §124.109(b)(2)(vi) requiring only a "list[ing of] all assets including those which are encumbered or held in trust, but the status of those encumbered or in trust must be clearly delineated."

52.     All of this was clear, or should have been clear, to any official at SBA who had even a minimal degree of familiarity with company financial statements. But, if all of this were somehow unclear to Mr. Klein, he could have, and should have, sought any reasonably needed clarifications from GTECI and the Tribe. He improperly declined to do so and, instead, proceeded to deny the Application.

53.     In sum, there was no proper basis for Mr. Klein to conclude in the Final Denial that GTECI and the Tribe had failed to adequately state or disclose how much of the Tribe's assets were available to support GTECI, what form the reported assets were in, and whether the Tribe had any other financial resources to support GTECI.

54.     As a result, SBA's determinations in the Final Denial that the Application should be denied because GTECI and the Tribe had not demonstrated either the Tribe's economic disadvantage, or the company's potential for success, were arbitrary, capricious and contrary to law, or otherwise constituted an abuse of any discretion that SBA had to consider such matters.

**WHEREFORE,** GTECI demands the following relief:

A.      Declaring that Defendant has violated the Small Business Act, its implementing regulations, and the APA for the reasons and in the manner alleged above;

B.      Enjoining Defendant from enforcing any determinations as set forth in the Final Denial;

C.      Directing Defendant to approve the Application and to certify GTECI's eligibility to participate in the Program;

D.      Awarding Plaintiff its reasonable attorneys' fees and costs of suit pursuant to the Equal Justice Act, 28 U.S.C. §2412;

E.      Granting GTECI such other and further relief that is just and appropriate.

Dated: April 12, 2019.

 /s/ *J. Stephen Simms*
J. Stephen Simms (382388)
Simms Showers LLP
201 International Circle, Suite 250
Baltimore, Maryland 21030
Phone:       410-783-5795
Facsimile:    410-510-1789
Email: jssimms@simmsshowers.com


David P. Healy (*pro hac vice* pending)
Dudley, Sellers, Healy, Heath,
   & Desmond, PLLC
3522 Thomsville Rd., Suite 301
Tallahassee, Florida 32309
(850) 222-5400
(850) 222-739 (fax)
dhealy@davidhealylaw.com


Counsel to Plaintiff GTEC Industries, Inc.