UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GTEC INDUSTRIES, INC., *Plaintiff*, v. ISABEL CASILLAS GUZMAN, Administrator, U.S. Small Business Administration, *Defendant*. | Civil Action No. 1:19-cv-01030 (CJN) |

**MEMORADUM OPINION**

This matter is before the Court on cross-motions for summary judgment. ECF Nos. 33 & 34. Plaintiff GTEC Industries, Inc. contends that the Small Business Administration's denial of its application to the 8(a) Business Development Program was unreasonable and contrary to law. The government contends the denial was reasonable because the application did not establish that the Plaintiff was owned by a recognized Indian tribe. For the following reasons, the Court grants the government's motion and denies Plaintiff's.

Background

The SBA administers the 8(a) Business Development Program to help disadvantaged businesses compete and access the federal procurement market. 13 C.F.R. § 124.1. To be eligible, an entity must be a small business and "unconditionally owned and controlled by one or more socially and economically disadvantaged individuals." 13 C.F.R. § 124.104; *see also id.* §§ 124.105–124.109 (listing other requirements including economic disadvantage and potential for business success).

1

Plaintiff GTEC Industries, Inc. is a for-profit professional service corporation headquartered in Cumming, Georgia. Complaint, ECF No. 1, at ¶ 9. In 2017, it applied for admission to the 8(a) program. AR at SBA254–488. It claimed eligibility as a "Tribally-owned concern," which requires the entity to be at least 51% owned by an Indian tribe. 13 C.F.R. § 124.3. The regulation further defines Indian tribe as:

> [A]ny Indian tribe, band, nation, or other organized group or community of Indians, including any [Alaska Native corporation], which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians, or is recognized as such by the State in which the tribe, band, nation, group, or community resides.

*Id.*

In its application, GTEC Industries asserted that it is fully owned by the Georgia Tribe of Eastern Cherokee. *See* Complaint, ECF No. 1, at Ex. A. More specifically, GTEC Industries presented a stock certificate listing the owner of all 100 of its shares as "Georgia Tribe of Eastern Cherokee, Inc. (collectively for Tribe)[.]" AR at SBA268. The Georgia Tribe of Eastern Cherokee, Inc. is a nonprofit based in Cumming, Georgia, that claims to be the corporate entity for the tribe of the same name. GTEC Industries also presented what appears to be "Tribal Annual Meeting Minutes" stating that GTEC Industries is "authorized and encouraged" to seek admission to the SBA's 8(a) Program. AR at SBA288.

Since 1993, the state of Georgia has officially recognized The Georgia Tribe of Eastern Cherokee. Specifically, GA Code § 44-12-300 provides:

> (a) The State of Georgia officially recognizes as legitimate American Indian tribes of Georgia the following tribes, bands, groups, or communities:
>   (1) The Georgia Tribe of Eastern Cherokee
>       P.O. Box 1993
>       Dahlonega, Georgia 30533
>       . . .

>   (b) The General Assembly may recognize tribes, bands, groups, or communities other than those stated in subsection (a) of this Code section as the General Assembly deems appropriate.

*Id.*

On May 14, 2018, the SBA denied GTEC Industries' application. The SBA determined that GTEC Industries had (1) failed to establish its economic disadvantage as required by 13 C.F.R. § 124.109(b)(2) and (2) failed to demonstrate its potential for success as required by 13 C.F.R. § 124.109(c)(6). AR at SBA512–16. GTEC Industries requested reconsideration. On November 26, 2018, the SBA issued a final decision on the same two grounds, albeit for somewhat different reasons. AR at SBA979–81.

GTEC Industries filed this suit on April 12, 2019. ECF No. 1. On August 5, 2019, the government moved for a stay pending further administrative action, ECF No. 9, which the Court granted. Minute Order of Feb. 3, 2020.

In a letter dated August 21, 2019, the SBA rescinded its November 26, 2018 decision and re-opened GTEC Industries' application. AR at SBA1047–50. In its letter, the SBA expressed concerns that it may have overlooked information related to the company's economic disadvantage and financial condition. *Id.* But the letter also noted that the SBA had obtained new information that GTEC Industries might not qualify as being owned by an Indian tribe eligible for 8(a) Program participation. *Id.* The agency explained that it had received a study by the Georgia Council on American Indian Concerns that investigated various parties claiming to be the Georgia Tribe of Eastern Cherokee.[1] Based on the Council Study, the SBA "question[ed] whether [GTEC

---

[1] The Georgia Council on American Indian Concerns was created pursuant to Georgia law to, *inter alia*, facilitate the resolution of disputes among tribes, advise state agencies regarding matters affecting tribes, and to preserve the culture and heritage of Indians and Indian descendants. GA Code § 44-12-283. According to the Council's website, it is "the only state entity specifically authorized to address the concerns of Georgia's American Indians." *See About the Council*,

3

Industries] qualifies as a tribally-owned concern for" the program and requested it corroborate that it is in fact owned by the Georgia Tribe of Eastern Cherokee that is recognized by Georgia. AR at SBA1048.

GTEC Industries responded on March 18, 2020. AR at SBA1051–68; *see also* AR at SBA1674–75. It argued that the Council's study is not legally binding and that there is sufficient evidence that it is owned by the tribe the Georgia Legislature recognized in 1993. AR at SBA 1053–55. It presented evidence that an officer of GTEC Industries, Lucian Lamar Sneed, was present as a Tribal representative at the signing of the bill recognizing the Tribe and that Sneed is related to a member of the Eastern Band of Cherokee Indians, a federally recognized Indian tribe. GTEC Industries also presented several letters from politicians that recognize Mr. Sneed's appointment as the Tribe's Tribal Registrar. And it presented a merger agreement between the Georgia Tribe of Eastern Cherokee, Inc., and the Georgia Tribe of Eastern Cherokee Indians, Inc. (another of the entities that claim to be the recognized Georgia Tribe of Eastern Cherokee).

On April 24, 2020, the SBA informed GTEC Industries that the application was denied. AR at SBA1650–56. GTEC Industries moved for reconsideration, AR at SBA1657–73, and on August 10, 2020, the SBA again denied the application. AR at SBA1674–78. The agency concluded that GTEC Industries did not provide sufficient information for the agency to determine that it is owned and controlled by an eligible Indian tribe. The SBA relied on the Council Study, which "concluded that [the Georgia Tribe of Eastern Cherokee, Inc.] is not the Tribe recognized by the Georgia General Assembly," and it "is not functioning as an Indian tribe" at all but as a "non-profit Indian heritage organization engaged in recruitment of Indians in the State of Georgia

---

Georgia Council on American Indian Concerns, https://georgiaindiancouncil.com/ (accessed August 15, 2022).

who are of Cherokee heritage." AR at SBA1674–75.[2]  The SBA also relied on the Office of Federal Acknowledgment's (OFA) findings in connection with the Georgia Tribe of Eastern Cherokee's petition for Federal acknowledgment as an Indian Tribe. AR at SBA1675.  The OFA found that the Tribe had a complicated history with competing leadership claims and other groups purporting to be the Tribe.  *Id.*[3]

Plaintiff appealed to the SBA's Office of Hearing and Appeals.  AR at SBA1–121.  In the decision now on review, the Office affirmed the SBA's denial of Plaintiff's application.  AR at SBA237–47.

Here, GTEC Industries moves for summary judgment on the grounds that the SBA was without authority to *sua sponte* reconsider the initial denial, and, on the merits, that the SBA's denial was contrary to law or arbitrary because GTEC Industries has shown that it qualifies as tribally-owned.  The government moves for summary judgment, arguing the SBA's final decision was reasonable.  The Court heard argument on the cross-motions.  Hearing of June 15, 2022.

**Legal Standards**

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In an APA challenge, "summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise

---

[2] The Council's website links to websites of the three recognized tribes. *See About the Council*, Georgia Council on American Indian Concerns, https://georgiaindiancouncil.com/ (accessed August 15, 2022).  For the "Georgia Tribe of Eastern Cherokee" it links to the website of the tribal entity of that name based in Dahlonega, Georgia, not the websites associated with the tribe based in Cumming, Georgia.  *Compare* georgiatribeeasterncherokee.com *with* georgiatribeofeasterncherokee.org and georgiatribeofeasterncherokee.com.

[3] The OFA also indicated that GTEC Industries' officer Sneed "may have attempted to improperly influence the Tribe's petition for acknowledgment."  AR at SBA237–52.

consistent with the APA standard of review.'" *Bridgeport Hosp. v. Becerra*, 2022 WL 612658, at *6 (D.D.C. Mar. 2, 2022) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2011).

The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A); *see Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014). To pass this test, agency action must be lawful and must demonstrate reasoned decisionmaking, including grappling with substantial issues and recording the reasoning involved, not just mere conclusions. *See Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005); *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1405, 1407 (D.C. Cir. 1995) (concluding that "[b]ecause the [agency] only listed the facts and stated its conclusions, but did not connect them in any rational way, the [agency's] decisions are arbitrary and capricious.").

An agency's decision need not be "a model of analytic precision to survive a challenge. A reviewing court will 'uphold a decision of less than ideal clarity if the [Board's] path may reasonably be discerned.'" *Dickson*, 68 F.3d at 1404 (*quoting Bowman Transp., Inc. v. Arkansas–Best Motor Freight Sys.*, 419 U.S. 281 (1974)). The explanation must, however, "minimally contain 'a rational connection between the facts found and the choice made.'" *Id.* (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Furthermore, the decision must respond to all non-frivolous arguments raised by the applicant. *Frizelle v. Slater*, 111 F.3d 172, 174 (D.C. Cir. 1997) (remanding where the Board failed to address two arguments that were not "facially frivolous").

Analysis

I.      **The SBA Has Authority to *Sua Sponte* Reconsider Its Denial.**

GTEC Industries contends that the SBA lacked authority to re-open its consideration of the application.  Pl.'s Mot. at 22.  It argues that the SBA can affirm an earlier denial on new grounds in only one instance—following a request for reconsideration from an applicant.  *See* 13 C.F.R. § 124.205(b) (2011).[4]  It contends that neither the governing statute nor the SBA's regulations permit the SBA's reconsideration, and so the SBA lacked authority to deny its application on grounds not raised in the November 26, 2019 decision.

The government argues that the SBA can always reconsider its decision.  It contends that it has long been established that absent a statutory or regulatory prohibition, "[t]he power to reconsider is inherent in the power to decide."  *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950).  According to the government, there are no specific statutory constraints here and so the SBA is free to reconsider its decision on any grounds.  *See* Def.'s Reply, ECF No. 40, at 2–3.

GTEC Industries replies that any inherent authority the SBA may have to reconsider its decisions is constrained by a regulatory scheme that provides particular means for reconsideration.  Pl.'s Sur-reply, ECF No. 49.  It argues that because there's a provision authorizing the SBA to reconsider an entity's *participation* in the program, 15 U.S.C. § 636(j)(10)(F), the SBA is constrained in reconsidering its own decision *denying* admission to the program in the first place.

---

[4] This provision was revised in 2020 to eliminate the process by which an applicant can ask the SBA to reconsider its initial denial.  *See* 13 C.F.R. § 124.205 (2020).  Depending on the grounds for the denial, an applicant may still appeal to the SBA's Office of Hearings and Appeals or the initial decision is the SBA's final decision.  *Id.* § 124.206.  Regardless of the grounds for denial, an applicant can reapply to the 8(a) program any time after 90 days of the final decision (or 12 months if the applicant has been denied three times within 18 months).  *See* 13 C.F.R. § 124.207.

The Court disagrees. Despite the number of pages GTEC Industries devotes to this argument, it is quite weak. Absent express regulatory or statutory provisions to the contrary, an agency may always unilaterally reconsider its decisions *denying* an application. *Albertson*, 182 F.2d at 399. Indeed, reconsideration of a *denial* places an applicant in the same position as if the applicant had appealed the denial to court and won. Courts generally can only compel agency action when it is non-discretionary; to the extent an agency's judgment is involved, a court can only *set aside* unreasonable actions—not compel other actions. *See* 5 U.S.C. § 706; *SEC v. Chenery Corp.,* 318 U.S. 80, 93–94 (explaining that "[i]t is not for [courts] to determine independently" how discretion entrusted to agencies should be exercised). As a result, restricting an agency's reconsideration of its denials makes no sense: It would force courts to hear lawsuits and then rule that an agency must reconsider its denial—the very result that GTEC Industries argues that the SBA was not permitted to undertake voluntarily.

Here, there is no statute or regulation displacing the SBA's authority to reconsider its denials. The provision on which the company relies has nothing to do with reconsidering applications at all, much less the reconsideration of *denied* applications. *See* 15 U.S.C. § 636(j)(10)(F). It instead involves the process for removing participating entities that are no longer eligible for the program. *Id.*; *see also* 13 C.F.R. § 124.303 (providing more details on the SBA's reviews of 8(a) participants' eligibility). And the SBA's rule expressly allowing an applicant to request reconsideration does not implicitly preclude the SBA from *sua sponte* reconsidering a denied application—even once that denial constituted final agency action. *See* 13 C.F.R. § 124.205(1) (2018); 13 C.F.R. § 124.206(a) (2018).

There is similarly no merit to the company's next argument: that the scope of the SBA's reconsideration should have been limited to the grounds given for its initial denial. There is no

regulatory or statutory basis for imposing such a requirement, and so the Court cannot impose one. *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council., Inc.*, 535 U.S. 519 (1978); *see also* 5 U.S.C. § 706(2)(D) (requiring courts to set aside agency action for improper procedures, but only where the procedure is "required by law"). And such a requirement would make little sense—an agency would be pressured to completely analyze and opine on every aspect of every application even when it thinks there is a preliminary or obvious ground for acting. This would add yet another layer of red tape to the administrative state and at the same time prevent agencies from correcting their own errors.

## II. The SBA's Denial Was Not Arbitrary and Capricious or Contrary to Law.

Plaintiff's second argument is that the SBA's decision was arbitrary and capricious. AR. 244–46. It contends that under Georgia law, the Tribe owns the company. Pl.'s Mot. at 28. And, it argues, the SBA acted arbitrarily in giving weight to the Council Study and OFA's Proposed Findings because those materials deal only with tribal *leadership*, not tribal *membership* or Georgia law regarding corporate ownership. GTEC Industries argues that the relevant Georgia statute defines the Georgia Tribe of Eastern Cherokee as *all* descendants of the Georgia Cherokee Indians. *See* Pl.'s Mot. at 29–30 (citing GA Code § 44-12-260). And the company argues that it is owned by the corporate entity for the Tribe (Georgia Tribe of Eastern Cherokee, Inc.) on behalf of all members of that Tribe. Pl.'s Mot at 30.

The government contends that the SBA's decision was reasonable. Def.'s Mot. at 10–13. It explains that the SBA had serious doubts as to whether GTEC Industries is owned by the corporate entity of the Georgia-recognized tribe or by some splinter group. The SBA considered the Council Study and the OFA's findings, noted significant leadership disputes and complicated tribal history, and concluded that GTEC Industries has not shown that the entity that owns it

9

(Georgia Tribe of Eastern Cherokee, Inc.) is the corporate form of the tribal entity recognized by the State of Georgia. The government argues that the SBA therefore acted reasonably in denying the application unless and until the company provided more evidence to prove that it is, in fact, owned by the Tribe.

The Court agrees with the government. To begin, the 8(a) Program regulations define "tribally-owned concern" as an entity majority-owned by an Indian tribe, and to be an Indian tribe under the regulation, it must be "recognized" by either the United States or the State in which it resides. 13 C.F.R. § 124.3. No party asserts that the Tribe is recognized by the federal government. Georgia, however, recognizes a tribe called "The Georgia Tribe of Eastern Cherokee." GA Code § 44-12-300.

But who or what constitutes the recognized Tribe? At times GTEC Industries suggests that the members of the authentic Tribe are "*all* those persons directly descended from the Cherokee peoples who suffered forced deportation[.]" Pl.'s Mot. at 4. But that's not necessarily right.[5] The Georgia statute that GTEC Industries relies on defines "American Indian tribe" as "any nation, tribe, band, group or community . . . whose members are descendants of American Indians indigenous to Georgia." GA. Code 44-12-260(2). Being such a descendant does not necessarily place one within the "nation, tribe, band, group or community." The statute requires members of such groups to be descendants of Indians indigenous to Georgia—it does not define the

---

[5] It appears that the leadership of Georgia Tribe of Eastern Cherokee, Inc., and GTEC Industries are trying to form an inclusive community of all descendants of the Cherokee people. *See* AR at SBA1069, SBA1074–76. That is an admirable goal. The Court does not intend for anything in this opinion to cast aspersions on such efforts.

membership of those groups. Nor does the statute providing official recognition. GA Code § 44-12-300.[6]

The SBA closely examined two governmental reports that explain the complicated history of the Georgia Tribe of Eastern Cherokee's leadership and membership. The Office of Federal Acknowledgement explained that various groups claim to be the Georgia Tribe of Eastern Cherokee, but in fact "represent[] completely different groups of different character, aims, and ancestry." AR at SBA1652. It went on to say that, while the group that the OFA seemed to consider the authentic Tribe (the Davis group, which is based in Dahlonega) has had internal leadership disputes and poor record keeping, it also has clear "disagreements with non-members running their own separate 'GTEC' organizations, such as . . . Lamar Sneed," who is an officer of GTEC Industries. *Id.*; *see also* AR at SBA1310. Similarly, the SBA reviewed the Council Report, which concluded that the "GTEC-Davis" group was the Tribe recognized by Georgia—not the "GTEC-Sneed" group. AR at SBA1093–94. The SBA independently reviewed the thoroughly reasoned reports and found them compelling. *See* AR at SBA1653. The SBA concluded that "[t]here is simply too much competing evidence for SBA to adopt [the] claim that GTEC is the Tribe recognized in Georgia." *Id.*

To be sure, GTEC Industries presented some evidence that those leadership disputes are history. It submitted what appears to be a merger agreement between Lucian Sneed as Chairman of the Georgia Tribe of Eastern Cherokee, Inc., and Thomas Mote, the Chief of the Georgia Tribe of Eastern Cherokee Indians, Inc. AR at SBA1061–63. Thomas Mote is the person the OFA decision considered to be (at least at one time) the leader of the Davis group of the Georgia Tribe

---

[6] If GTEC Industries' interpretation were correct, Georgia's recognition of two different Cherokee communities appears illogical. *See* GA Code 44-12-300(a)(1),(3) (recognizing the Georgia Tribe of Eastern Cherokee and the Cherokee of Georgia Tribal Council).

of Eastern Cherokee (the group that the Council Report and the OFA seem to suggest is the authentic Tribe). The agreement provides:

> It is now the purpose of this merger agreement to consolidate the two groups under the leadership of Thomas Mote, Chief of the Georgia Tribe of Eastern Cherokee Indians, Inc., and Lucian Lamar Sneed, Chairman of the Georgia Tribe of Eastern Cherokee, and incorporated under that State recognized name. Both entities having fully documented Cherokee enrolled members. Both going forward from the date of this agreement as the One and Only Georgia Tribe of Eastern Cherokee.
>
> . . .
>
> It is therefore resolved that the Two entities be merged into one and go forward as the Georgia Tribe of Eastern Cherokee.
>
> The ratification of this merger agreement is in full acknowledgement that the only legitimate Cherokee Tribe in Georgia shall be the Georgia Tribe of Eastern Cherokee, as incorporated and registered with the State of Georgia.

AR at SBA1062–63.

While the SBA did not expressly analyze the merger agreement, its views on the topic are clear. The agency quoted from, and found compelling, those portions of the OFA report that suggest that Mote may have been acting beyond his authority in signing such an agreement, or that even suggest the merger agreement may be fraudulent. As stated in the SBA's April 24, 2020 denial, and as quoted in the decision on review, the SBA explained:

> [In the 1990s] five GTEC council members . . . and [the] GTEC Vice Chief . . . wrote two letters to Secretary of Interior Gale Norton. They state that "our own chief, Thomas Mote," has joined forces with a Lamar Sneed to "take over" GTEC's "name and recognition status in the State of Georgia." . . . The GTEC council members write, "our Council and Tribe is opposed to our chief's affiliation with this plan. He acts on his own volition, against the express wishes of our people."
>
> . . .
>
> Beginning in 2010, the Department [of the Interior] again began to receive letters from various individuals claiming to represent [The Georgia Tribe of Eastern Cherokee]. On August 16, 2010, a letter supposedly signed by Thomas B. Mote, requested OFA change the address of GTEC to one in Cumming, Georgia, and identified Lucian Lamar Sneed, a resident of Cumming, as the contact person and "Council Chairman," but also identified Thomas B. Mote as the "original petitioner

> (re-elected chief)." [But] on April 13, 2011, OFA received a mailing signed by Walker Dan Davis and seven council members that included a list of the "newly selected officials" as of March 21, 2011. Davis was listed as the "chief and primary contact person for the Bureau of Indian Affairs."

AR at 15–16. The SBA also relied upon a portion of the OFA report that seems to cast serious doubt on the authenticity of documents involving Sneed and Mote at the time of the merger agreement. The OFA had explained that it received a letter supposedly signed by Mote that identified Sneed as the contact person for the tribe and told the OFA to send correspondence to a mailing address in Cumming, Georgia. But the OFA noted that this representation was highly inconsistent with its past communications with the Tribe and did not include any reliable evidence like official minutes or election results indicating these changes were authorized. Later, Mote said of the Cumming address, "That is not my address, nor has it ever been our Tribal address." AR at SBA1653; AR at SBA892. Apparently mail to that address only went to Sneed. AR at SBA165.

It is possible that the merger agreement is authentic and that GTEC Industries' owner (the Georgia Tribe of Eastern Cherokee, Inc.), is indeed the corporate form of the recognized Tribe. But in light of the many leadership disputes and significant questions about the authenticity of the documents, the SBA did not act unreasonably (or arbitrarily) in discounting such evidence.

For the same reasons, the SBA's decision was not unreasonable (or arbitrary) in discounting the significance of Sneed's attendance as a Tribal representative at the signing ceremony for the bill recognizing the Georgia Tribe of Eastern Cherokee, the various letters from politicians to Sneed discussing his tribal roles, or Sneed's relation to the Eastern Band of Cherokee Indians (North Carolina). AR at SBA 1054–55. While somewhat probative, none of these materials dispels the SBA's clearly articulated concerns about identifying which group or groups

constitute the officially-recognized Tribe. The SBA did not act unreasonably in wanting more or clearer evidence that GTEC Industries is owned by the recognized Tribe.[7]

Nor was it arbitrary for the SBA to rely on the factual findings of other agencies—either the OFA's Proposed Findings or the Council Report. *See City of Bos. Delegation v. FERC*, 897 F.3d 241, 255 (D.C. Cir. 2018) ("Agencies can be expected to respect [the] views of such other agencies as to those problems for which those other agencies are more directly responsible and more competent.") (quotation marks omitted) (alterations original). While neither is legally binding, it was not arbitrary for the SBA to independently review them and credit them for their fact-finding and analysis. Both are very thorough analyses provided by agencies with expertise in Indian affairs, and they both provide detailed factual bases for their conclusions. To be sure, as GTEC Industries notes, the OFA applies federal standards for tribal recognition even though State recognition is enough for the 8(a) Program. Pl.'s Mot. at 31; Pl.'s Opp. at 24–25. But the SBA reasonably relied on the *facts* provided in the OFA's proposed findings.

GTEC Industries also argues that Georgia law provides that GTEC officers owe fiduciary duties to "the company's owner, namely the Tribe." Pl.'s Mot. at 32. In support, the company shows a stock certificate that states all 100 shares of GTEC Industries are owned by "Georgia Tribe of Eastern Cherokee, Inc. (collectively for the Tribe)." AR at SBA268. As mentioned above, it is not clear that the Georgia Tribe of Eastern Cherokee, Inc. is in fact owned by the Tribe. But at oral argument the Plaintiff seemed to contend that regardless of whether the Georgia Tribe of Eastern Cherokee, Inc. is actually the incorporated form of the Tribe, the parenthetical on the stock certificate gives the authentic Tribe an ownership interest.

---

[7] Such evidence could reasonably include minutes from the component groups each validating the merger, a declaratory judgment from a Georgia court regarding the ownership of GTEC Industries and/or the Georgia Tribe of Eastern Cherokee, Inc., or even a resolution from the state legislature.

This argument doesn't work. It still leads to the question of what (or who) is "the Tribe" as reflected on the stock certificate. And it is not at all clear from the stock certificate alone that the authentic Tribe (whichever group or persons that may be) has ownership of or would, for example, get dividends from GTEC Industries. Indeed, based on GTEC Industries' representations in this litigation that all Cherokee descendants living in Georgia are part of the Georgia Tribe of Eastern Cherokee and the OFA and Council Report's findings that only one small group is the Tribe, it is easy to see why the SBA doubts that "the Tribe" on the stock certificate refers to the same community recognized by the Georgia legislature. At the very least, it was not unreasonable or arbitrary for the agency to harbor such doubts.[8]

## Conclusion

For the foregoing reasons, the Court will grant the government's motion, deny the plaintiff's motion, and enter judgment on behalf of the government. An order will issue contemporaneously with this opinion.

DATE: August 16, 2022

CARL J. NICHOLS
United States District Judge

---

[8] GTEC Industries also complains that the SBA conflates the 8(a) Program's requirements for Tribal control and Tribal ownership. *See* Pl.'s Opp. at 31. The Court does not believe it did so. But, to the extent it did, it was only in its litigation position. As Plaintiff admits, "only GTEC's supposed failure to demonstrate its Tribal ownership . . . caused SBA in the Final Denial to deny the company's Application." *Id.*